LYON (BERTRAM v.). See Case No. 1,362.

## Case No. 8,647.

### LYON et al. v. FIFTY–SIX THOUSAND FOUR HUNDRED AND TWELVE FEET OF LUMBER.[1]

District Court, D. Connecticut. May, 1859.

SHIPPING—SEAWORTHINESS — INSUFFICIENT CREW.

[A sloop laden, both in hold and on deck, with lumber, *held* unseaworthy, in that she was manned by only three men, one of whom had lost a leg; and also in respect to physical condition, it appearing that she was 32 years old, had never been rebuilt, and had many rotten timbers, and that her seams opened, so as to cause her to fill, during a storm so moderate that she was able to carry her usual sails without damage thereto, and which was weathered without injury by a similar vessel, similarly laden.]

[This was a libel by Lyon and Billard to recover possession of a lot of lumber and shingles, which were shipped on board the sloop Columbus, and which the master refused to deliver.]

INGERSOLL, District Judge. The libel in this case alleges that in the month of November, in the year 1858, at Albany, in the state of New York, there was shipped for the libelants, on board the sloop Columbus, whereof Charles Johnson was master, and consigned to them, 56,412 feet of pine lumber, and 120 bundles of shingles, in good order and well conditioned, and that thereupon the said master signed a bill of lading for the same, agreeing to deliver the same to the libelants in the like good order, at New Haven, Conn., on the payment of freight at the rate of one dollar twenty-five cents per

thousand feet for the lumber and twelve and a half cents per bundle for the shingles, the dangers of the seas only excepted. That soon thereafter the said master in said sloop, with said lumber and shingles on board, sailed from said port of Albany, but that owing to the unseaworthiness of the Columbus, and her being insufficiently manned, and to the negligence and insufficiency of the master and crew in her navigation, she became, before the completion of the voyage, disabled from the performance thereof, and that thereupon, near the port of Westport, in Connecticut, the said master of the Columbus caused the said lumber and shingles to be transshipped from the said sloop and put on board the sloop Michigan, John Johnson, master, to be transported in her to the port of New Haven, in fulfillment of the contract in the bill of lading. That, the Michigan having arrived at the port of New Haven with the lumber and shingles on board, the libelants were ready and offered to pay the master of the Michigan, or whoever should otherwise appear to be entitled or authorized to receive the same, the freight money as agreed, and demanded the delivery of the lumber and shingles both of the said John Johnson and the said Charles Johnson, but that they, confederating to deprive the libelants of the said lumber and shingles, refused to deliver the same, unless your libelants should pay to them or one of them, over and above the freight stipulated to be paid, a further large sum, to wit, seven hundred dollars. That no portion of the same has been delivered, with the exception of forty-two bundles of shingles. The libel prays that the merchandise mentioned may be delivered to the libelants, and that the said Charles Johnson and John Johnson may be decreed to pay the damages which they (the libelants) have sustained, together with their costs.

Charles Johnson, the master of the Columbus, appears, and makes answer to the libel. He admits that he was her master and owner; that he at Albany took on board the lumber and shingles stated in the libel to be transported to New Haven, and executed the bill of lading as therein stated. He admits that the merchandise in the bill of lading mentioned was not transported to New Haven in the Columbus; that on the voyage it was transshipped on board the Michigan, and by the latter vessel carried to New Haven, at which latter port the libelants were ready to receive the same and pay the freight and charges as agreed upon in the bill of lading, and that they tendered the said freight and charges, and demanded the delivery to them of the lumber and shingles in the libel mentioned, which he refused to do, unless the libelants would also pay certain other charges which the claimant insisted were right and proper, and which other charges, as the claimants insist, accrued in saving the property from

---

[1] [Not previously reported.]

the perils of the seas, and were not comprehended in the terms of the bill of lading. He insists that the lumber and shingles were properly stowed; that at the commencement of the voyage the Columbus was properly officered, manned, and equipped, and was seaworthy in every respect; that on the voyage, in consequence of a violent gale of wind, the vessel sprung a leak, filled with water, and with the lumber on deck became unmanageable, and that in consequence thereof the danger was imminent that the lumber and shingles on deck would be lost; that there would be no danger to the vessel if the lumber on deck were thrown overboard, but that to save the same to the libelants he drove the vessel on shore, by which his vessel became greatly damaged, and his life and the lives of his crew were put in peril, and all for the purpose of saving the lumber and shingles for the libelants. For this service, which he claims to be in the nature of a salvage service, he claims he should be paid, and that he refused to deliver the lumber and shingles to the libelants because they refused to pay for such latter service.

The first question presented is, was the Columbus, at the commencement of the voyage, properly manned and equipped, and in every respect seaworthy? If she was not, then it is admitted by the respondent that the claim which he makes is unfounded, and that the decree as prayed for should be in favor of the libelants. The Columbus, with the lumber on board, sailed from Albany about the 22d of November, 1858. She proceeded on her voyage, stopping at various places as far as Norwalk Islands, where she arrived on Saturday evening, the 27th of November, and came to anchor for the night. Early in the morning, on Sunday the 28th of November, she again set sail, with a view to proceed on her voyage to New Haven. The weather at the time was cloudy. Early in the day it blew strong from the northeast, accompanied with thick snow. About 4 p. m. it was discovered that she was leaking. The water in the hold increased so fast that in about half an hour she filled. The lumber on board kept her from going to the bottom. After it became evident that she must fill with water, she was headed for the shore. She stuck on a sand bar near Stratford, where the lumber on deck was secured fast, and the crew went on shore. The leaks, so far as discovered, were occasioned by the opening of her seams occasioned by the strain produced by the winds and waves. The blow was not so violent as to occasion any loss to any portion of the deck load, or to occasion its shifting. None of the sails or rigging of the vessel were carried away. During the whole of the time she had her forward and main sail set with two reefs in them. These were all the sails she ever carried. Another vessel, of about the same size as the Columbus, laden with a cargo of lumber on deck and in the hold, from Albany, bound to New Haven,

was in the Sound on the same Sunday, and was in the storm. and arrived at her port of delivery that night without loss or damage.

From the evidence before the court I come to the conclusion that the Columbus was not seaworthy for the voyage, and that in consequence of such unseaworthiness the disaster that took place occurred. She had only three men on board all told; one of them, the cook, had lost one leg. This complement of men for a winter's voyage from Albany to New Haven, at a time when violent snowstorms are to be expected, in such a vessel, heavily laden as she was, with a cargo of lumber on deck and in the hold, was certainly insufficient. Prudent navigators go more strongly manned, although many navigators navigate their vessels with no more men than the Columbus had on board. In this respect she was unseaworthy.

In another respect she was unseaworthy. She was at least thirty-two years old. She had never been rebuilt. Though she had, a short time before the disaster, been repaired, many of her timbers and plank were rotten. The blow was not violent enough to open the seams of a staunch vessel in the way the seams of the Columbus were opened. After the disaster, she was not deemed fit to repair, and has been forsaken by her owner to go to destruction.

With this view of the case, without considering other questions that have been made, the decree must be in favor of the libelants.